

FILED IN OPEN COURT

OCT 26 2017

CHARLES R. DIARD, JR.
CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | CRIM NO.: 16-cr-00226-KD |
| | * | USAO NO.: 16R00376 |
| v. | * | |
| | * | VIOLATIONS: |
| RICHARD SNELLGROVE, M.D. | * | 21 U.S.C. § 841(a)(1) |
| | * | 18 U.S.C. §§ 1347(a)(1), 2(a) |
| | * | |
| | * | |

## SUPERSEDING INDICTMENT

I. **INTRODUCTION**

At all times relevant to this Superseding Indictment:

### APPLICABLE FEDERAL LAW

1. The Controlled Substances Act (hereinafter "CSA") governs the distribution and dispensing of various listed drugs, including narcotics, prescribed by medical practitioners. The CSA assigns legal authority for the regulation of Controlled Substances to the Drug Enforcement Agency (hereinafter "DEA"). The CSA charges the DEA with the prevention, detection, and investigation of the diversion of Controlled Substances from legitimate channels while at the same time ensuring that adequate supplies are available to meet legitimate domestic medical, scientific and industrial needs.

2. Under Title 21, United States Code, Section 802(21) the term "practitioner" is defined as a "physician . . . registered, or otherwise permitted by the United States or the jurisdiction in which the he practices . . . to distribute, dispense, . . . administer, . . . a Controlled Substance in the course of professional practice . . . "

1

3. The DEA issues registration numbers to qualifying medical practitioners, which is required before a practitioner is authorized to prescribe a Controlled Substance. If a practitioner has the appropriate DEA registration number, then a prescription for a Controlled Substances is valid so long as it is issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his or her professional practice.

4. The practitioner is responsible for the proper prescribing and dispensing of Controlled Substances prescribed under his or her name. The practitioner is responsible for ensuring that the prescription conforms to all requirements of the law and regulations, both federal and state. Controlled Substances may only be distributed or dispensed lawfully in the manner prescribed by the mechanism created by the CSA. Accordingly, even if a practitioner has the appropriate DEA registration number, it is illegal to prescribe a Controlled Substance (1) if the prescription is issued outside the usual course of professional practice; or (2) if the prescription is not issue for a legitimate medical purpose.

5. Federal regulations require a prescription for a Controlled Substance to be dated as of, and signed on, the day issued, bearing the patient's full name and address, the drug name, strength, dosage form, quantity prescribed, directions for use, and the name, address, and DEA registration number of the prescriber.

## CONTROLLED SUBSTANCES

6. Title 21, United States Code, Section 801, *et seq.*, and its implementing regulations set forth which drugs and other substances are defined by law as "Controlled Substances." Those Controlled Substances are then assigned to one of five schedules — Schedule I, II, III, IV, or V — depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

7. During the time period alleged in this Superseding Indictment, Fentanyl, Oxycodone, Oxymorphone, Methadone, and Hydrocodone were all listed as "Schedule II" Controlled Substances. The term "Schedule II" means: (1) the drug has a currently accepted medical use with severe restrictions; (2) the drug has a high potential for abuse; and (3) abuse of the drug may lead to severe psychological or physical dependence. Abuse of Schedule II Controlled Substances can lead to addiction, overdose, and sometimes death.

8. During the time period alleged in this Superseding Indictment, Lorazepam was listed as a "Schedule IV" Controlled Substances. The term "Schedule IV" means: (1) the drug has a currently accepted medical use, (2) the drug has a low potential for abuse relative to drugs listed in Schedule I, II, and III, and (3) abused may lead to limited physical or psychological dependence relative drugs listed in Schedule I, II, and III.

### THE DEFENDANT

9. Defendant **RICHARD SNELLGROVE, M.D.** was a Baldwin County, Alabama physician. He was licensed to practice medicine in the State of Alabama.

10. **SNELLGROVE** obtained two DEA registration numbers, which allowed him to prescribe and dispense certain Controlled Substances from his Spanish Fort and Fairhope clinic locations, so long as the prescriptions were issued in the usual course of professional practice and for a legitimate medical purpose. These Controlled Substances included, but were not limited to — Fentanyl, Oxycodone, Oxymorphone, Methadone, Hydrocodone, and Lorazepam.

### THE DECEASED

11. Matthew Roberts, a native of Mississippi, was formerly the lead guitarist for the band 3 Doors Down. Roberts was a patient of **SNELLGROVE's** since at least 2005. Between 2005 and August 2016, **SNELLGROVE** regularly prescribed Controlled Substances to Roberts.

Prior to Roberts' departure from 3 Doors Down, **SNELLGROVE** received numerous gifts from the band, including backstage access to 3 Doors Down concerts, as well as 3 Doors Down band memorabilia.

12. After finishing the 3 Doors Down European Tour in 2012, Roberts voluntarily entered into an addiction treatment program in Arizona under an assumed name for his opioid addiction. This in-patient addiction treatment lasted from April 7, 2012 through May 7, 2012.

13. Following the completion of his addiction treatment in May 2012, Roberts continued to be a **SNELLGROVE** patient, and continued the receive prescriptions for certain non-opioid Controlled Substances. However, **SNELLGROVE** did not prescribe opioid drugs to Roberts again until September 2014.

14. Starting in September 2014 and continuing through August 2016, **SNELLGROVE** prescribed several opioid drugs to Roberts, including, Hydrocodone, Oxycodone, Oxymorphone, and Fentanyl.

15. In the early hours of August 20, 2016, 38-year old Matthew Roberts died in the hallway of a hotel in West Bend, Wisconsin. He was scheduled to play in a Veteran's benefits concert later that day in Milwaukee. At the time of his death, Roberts had a 75 mcg/hr Fentanyl patch on his body.

**THE GRAND JURY CHARGES:**

<u>COUNT ONE</u>

16. On or about August 13, 2015, in the Southern District of Alabama, Southern Division, the defendant,

**RICHARD SNELLGROVE, M.D.**

did knowingly, intentionally, and unlawfully distribute and dispense, and cause to be distributed

4

and dispensed, Hydrocodone, a Schedule II Controlled Substance, by means of a prescription, for no legitimate medical purpose and outside the usual course of professional practice.

17. Specifically, **SNELLGROVE** wrote a prescription — in the name of one of Matthew Roberts' family members — for 75 tablets of 10 mg Norco, a brand name for Hydrocodone. The family member was not one of **SNELLGROVE's** patients at that time. **SNELLGROVE** knew this prescription was intended to be used by Matthew Roberts.

18. In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT TWO

19. On or about August, 13, 2015, in the Southern District of Alabama, Southern Division, the defendant,

**RICHARD SNELLGROVE, M.D.**

did knowingly, intentionally, and unlawfully distribute and dispense, and cause to be distributed and dispensed, Lorazepam, a Schedule IV Controlled Substance, by means of prescription, for no legitimate medical purpose and outside the usual course of professional practice.

20. Specifically, **SNELLGROVE** wrote a prescription — in the name of the same family member described in Count One — for 30 tablets of Ativan, a brand name for Lorazepam. The family member was not one of **SNELLGROVE's** patients at that time. **SNELLGROVE** knew this prescription was intended to be used by Matthew Roberts.

21. In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT THREE

22. On or about March 14, 2016, in the Southern District of Alabama, Southern Division, the defendant

**RICHARD SNELLGROVE, M.D.**

did knowingly, intentionally, and unlawfully distribute and dispense, and cause to be distributed and dispensed, Fentanyl, a Schedule II Controlled Substance, by means of prescription, for no legitimate medical purpose and outside the usual course of professional practice.

23. Specifically, **SNELLGROVE** wrote a prescription for a 30-day supply of 10 Fentanyl patches at the 50 mcg/hr strength in Matthew Roberts' name.

24. In violation of Title 21, United States Code, Section 841(a)(1).

### COUNT FOUR

25. On or about March 17, 2016, in the Southern District of Alabama, Southern Division, the defendant

**RICHARD SNELLGROVE, M.D.**

did knowingly, intentionally, and unlawfully distribute and dispense, and cause to be distributed and dispensed, Fentanyl, a Schedule II Controlled Substance, by means of prescription, for no legitimate medical purpose and outside the usual course of professional practice.

26. Specifically, **SNELLGROVE** wrote a prescription for a 30-day supply of 10 Fentanyl patches at the 25 mcg/hr strength in Matthew Roberts' name.

27. In violation of Title 21, United States Code, Section 841(a)(1).

### COUNT FIVE

28. On or about March 24, 2016, in the Southern District of Alabama, Southern Division, the defendant,

**RICHARD SNELLGROVE, M.D.**

did knowingly, intentionally, and unlawfully distribute and dispense, and cause to be distributed and dispensed, by means of prescription, Fentanyl, a Schedule II Controlled Substance, to an individual known to the Grand Jury and identified herein as "J.R." for no legitimate medical

purpose and outside the usual course of professional practice.

29. Specifically, Matthew Roberts asked J.R.'s permission to allow **SNELLGROVE** to write Roberts a prescription for Fentanyl patches in J.R.'s name so that J.R.'s insurance would pay for the prescription. Thereafter, **SNELLGROVE** wrote a prescription for a 30-day supply of 10 Fentanyl patches at the 75 mcg/hr strength in J.R.'s name. **SNELLGROVE** knew this prescription was intended to be used by Matthew Roberts.

30. In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT SIX

31. On or about March 24, 2016, in the Southern District of Alabama, Southern Division, the defendant,

### RICHARD SNELLGROVE, M.D.

aided and abetted by others, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a healthcare benefits program in connection with the payment for healthcare benefits, items, or services.

32. Specifically, **SNELLGROVE** wrote a prescription for the fentanyl patches described in Count Five, which were subsequently billed to J.R.'s Blue Cross & Blue Shield of Alabama insurance plan. At the time he wrote this prescription, **SNELLGROVE** knew these Fentanyl patches were intended to be used by Matthew Roberts, not J.R.

33. In violation of Title 18, United States Code, Sections 1347(a)(1) and 2(a).

## COUNT SEVEN

34. On or about April 14, 2016, in the Southern District of Alabama, Southern Division, the defendant

### RICHARD SNELLGROVE, M.D.

did knowingly, intentionally, and unlawfully distribute and dispense, and cause to be distributed and dispensed, Fentanyl, a Schedule II Controlled Substance, by means of prescription, for no legitimate medical purpose and outside the usual course of professional practice.

35. Specifically, **SNELLGROVE** wrote a prescription for a 30-day supply of 10 Fentanyl patches at the 50 mcg/hr strength in Matthew Roberts' name.

36. In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT EIGHT

37. On or about April 18, 2016, in the Southern District of Alabama, Southern Division, the defendant,

### RICHARD SNELLGROVE, M.D.

did knowingly, intentionally, and unlawfully distribute and dispense, and cause to be distributed and dispensed, by means of prescription, Fentanyl, a Schedule II Controlled Substance, to an individual known to the Grand Jury and identified herein as "J.R." for no legitimate medical purpose and outside the usual course of professional practice.

38. Specifically, **SNELLGROVE** wrote a prescription in J.R.'s name for a 30-day supply of 10 Fentanyl patches at the 50mcg/hr strength. At the time the prescription was written, **SNELLGROVE** knew the Fentanyl patches were not for J.R., but rather for Matthew Roberts.

39. In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT NINE

40. On or about April 18, 2016, in the Southern District of Alabama, Southern Division, the defendant,

### RICHARD SNELLGROVE, M.D.

aided and abetted by others, did knowingly and willfully execute and attempt to execute a scheme

and artifice to defraud a healthcare benefits program in connection with the payment for healthcare benefits, items, or services.

41. Specifically, **SNELLGROVE** wrote a prescription for the Fentanyl patches described in Count Eight in the name of J.R., which was subsequently billed to J.R.'s Blue Cross & Blue Shield of Alabama insurance plan. J.R. was not aware that this prescription for Roberts had been written in J.R.'s name. At the time he wrote this prescription, **SNELLGROVE** knew these Fentanyl patches were intended to be used by Matthew Roberts, not J.R.

42. In violation of Title 18, United States Code, Sections 1347(a)(1) and 2(a).

## COUNT TEN

43. On or about July 12, 2016, in the Southern District of Alabama, Southern Division, the defendant

### RICHARD SNELLGROVE, M.D.

did knowingly, intentionally, and unlawfully distribute and dispense, and cause to be distributed and dispensed, Fentanyl, a Schedule II Controlled Substance, by means of prescription, for no legitimate medical purpose and outside the usual course of professional practice.

44. Specifically, **SNELLGROVE** wrote a prescription for a 30-day supply of 10 Fentanyl patches at the 50 mcg/hr strength in Matthew Roberts' name.

45. In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT ELEVEN

46. On or about July 20, 2016, in the Southern District of Alabama, Southern Division, the defendant

### RICHARD SNELLGROVE, M.D.

Did knowingly, intentionally, and unlawfully distribute and dispense, and cause to be distributed

and dispensed, Fentanyl, a Schedule II Controlled Substance, by means of prescription, for no legitimate medical purpose and outside the usual course of professional practice.

47. Specifically, **SNELLGROVE** wrote a prescription for a 30-day supply of 10 Fentanyl patches at the 75 mcg/hr strength in Matthew Roberts' name.

48. In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT TWELVE

49. On or about August 18, 2016, in the Southern District of Alabama, Southern Division, the defendant,

### RICHARD SNELLGROVE, M.D.

did knowingly, intentionally, and unlawfully distribute and dispense, and cause to be distributed and dispensed, by means of a prescription, Fentanyl, a Schedule II Controlled Substance, for no legitimate medical purpose and outside the usual course of professional practice.

50. Specifically, **SNELLGROVE** wrote a prescription for a 30-day supply of 10 Fentanyl patches at the 50 mcg/hr strength in Matthew Roberts' name. Roberts was unable to fill this prescription at a local pharmacy.

51. In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT THIRTEEN

52. On or about August 18, 2016, in the Southern District of Alabama, Southern Division, the defendant,

### RICHARD SNELLGROVE, M.D.

did knowingly, intentionally, and unlawfully distribute and dispense, and cause to be distributed and dispensed, by means of a prescription, Fentanyl, a Schedule II Controlled Substance, for no legitimate medical purpose and outside the usual course of professional practice.

53. Specifically, after Roberts was unable to fill the prescription for 50 mcg/hr Fentanyl patches as described in Count Twelve, **SNELLGROVE** wrote Roberts a second prescription for a 30-day supply of 10 Fentanyl patches. However, this second prescription was for Fentanyl patches at the 75 mcg/hr strength. Roberts found a pharmacy that had the 75 mcg/hr Fentanyl patches in stock, and he filled the prescription at approximately 7:53 pm on August 18, 2016.

54. On or about August 20, 2016, Matthew Roberts died from the use of the Fentanyl prescribed by **SNELLGROVE**.

55. In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

A TRUE BILL

---

FOREMAN, UNITED STATES GRAND JURY
SOUTHERN DISTRICT OF ALABAMA

RICHARD W. MOORE
UNITED STATES ATTORNEY
by:

---

CHRISTOPHER J. BODNAR
Assistant U.S. Attorney

---

DEBORAH A. GRIFFIN
Assistant U.S. Attorney

---

VICKI M. DAVIS
Assistant U.S. Attorney
Chief, Criminal Division

OCTOBER 2017